DEREK SMITH LAW GROUP, PLLC
CAROLINE H. MILLER, ESQUIRE
Attorney ID No. 321420
1628 Pine Street
Philadelphia, PA 19103
(267) 857-0832
catherine@dereksmithlaw.com
*Attorneys for Plaintiff Teena Robinson*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TEENA ROBINSON,<br><br>                    Plaintiff,<br><br>        v.<br><br>CLINICAL CARE ASSOCIATES OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM, *individually and doing business as* PENN MEDICINE AT BUCKS COUNTY, REBECCA MILLER, *individually,* KAREN SLOVER, *individually*, and TARA O'KEEFE, *individually*,<br><br>                    Defendants. | Civil Action No.<br><br>PLAINTIFF DEMANDS A TRIAL BY JURY |

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

Plaintiff, TEENA ROBINSON, (hereinafter referred to as "Plaintiff" or "Defendant ROBINSON"), by and through Plaintiff's attorneys, DEREK SMITH LAW GROUP, PLLC, as and for Plaintiff's Complaint in this action against the Defendant CLINICAL CARE ASSOCIATES OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM, *individually and doing business as* PENN MEDICINE AT BUCKS COUNTY (hereinafter referred to as "UPENN"), Defendant REBECCA MILLER (hereinafter referred to as "Defendant MILLER"),

Defendant KAREN SLOVER (hereinafter referred to as "Defendant SLOVER"), and Defendant TARA O'KEEFE (hereinafter referred to as "Defendant O'KEEFE") (collectively hereinafter referred to as "Defendants") upon both information and belief, alleges as follows:

## INTRODUCTION

1.  At its heart, this case is about a woman who was more than qualified to excel in her role, yet was subjected to relentless discrimination, mockery, and neglect by her employers. Despite her immense strength and dedication, her disability became the target of cruel retaliation, as she was ignored, belittled, and punished for simply existing in a world that refused to accommodate her. This is not just a case of wrongful treatment—this is a profound injustice, a violation of her rights, and an abuse of power that denied her the dignity and respect she rightfully deserved.

2.  Defendant Robinson brings this action for monetary damages and all other appropriate relief as deemed appropriate by the court, pursuant to Americans with Disabilities Act of 1990 ("ADA") as amended by the ADA Amendments Act of 2008 ("ADAAA") in addition to the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, et. seq. ("PHRA"), to redress the Defendants' unlawful employment practices in violation of the above Federal, State, and local statutes.

## JURISDICTION AND VENUE

3.  This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to the varying Federal and State common laws.

4.  The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3), 42 U.S.C. §2000e-5(f)(3), and §1367.

5.  In accordance with the Federal Rules of Civil Procedure, the venue is proper in this district based upon the fact that Defendants' unlawful actions occurred within the Eastern District of

Pennsylvania. Furthermore, Defendants were and are still believed to be conducting business in this judicial district. In sum, a substantial part of the events or omissions giving rise to this action, including the unlawful conduct herein occurred in this district.

6. As such venue is proper in this Court pursuant to 28 U.S.C. §1391.

## PARTIES

7. Plaintiff TEENA ROBINSON (hereinafter referred to as Plaintiff and/or "Defendant TEENA") is an individual woman who is a resident of Bensalem, Pennsylvania, in Bucks County, and is over the age of eighteen years, and otherwise *sui juris*.

8. Mrs. Robinson is an individual "disabled" as defined by 42 U.S.C. §12102 (1).

9. Defendant Clinical Care Associates of the University of Pennsylvania Health System, Inc. (hereinafter as "Defendant UPENN") was and still is a domestic for-profit corporation registered in the Commonwealth of Pennsylvania, with its principal place of business located at 150 Monument Road, Bala Cynwyd, Pennsylvania 19004.

10. At all times material, Defendant UPENN did and continues to do business as "Penn Medicine at Bucks County"

11. At all times material, Defendant UPENN owned and operated a medical facility at 777 Township Line Road, Yardley, Pennsylvania 19067 (hereinafter referred to as the "Bucks County Office").

12. At all relevant times, Defendant UPENN has been continuously doing business in the Commonwealth of Pennsylvania. 42 U.S.C. § 12111(5).

13. Defendant Company's exact number of employees is unknown to Plaintiff, but upon information and belief, there are well more employees than the statutory minimum.

14. Defendant UPENN is a "employer" within the meaning of 42 U.S.C. §12111(5).

3

15. Defendant UPENN was Defendant Robinson's employer.

16. At all times material hereto, Defendant Rebecca "Becky" Miller (hereinafter referred to as "Defendant Miller"), was employed by Defendant UPENN as the "Associate Practice Manager."

17. At all times material hereto, as the "Associate Practice Manager" Defendant Miller asserted supervisory authority over Plaintiff. In this role, Defendant Miller maintained control over Plaintiff, including the ability to hire, fire, adjust hours, reprimand, promote, and/or demote Plaintiff.

18. At all times material, Defendant Miller is believed to be individual able-bodied female.

19. At all times material hereto, Defendant Karen Slover (hereinafter referred to as "Defendant Slover"), was employed by Defendant UPENN as the "Director of operations."

20. At all times material, Defendant Slover is believed to be individual able-bodied female.

21. At all times material hereto, as the "Director of operations" Defendant Slover asserted supervisory authority over Plaintiff. In this role, Defendant Slover maintained control over Plaintiff, including the ability to hire, fire, adjust hours, reprimand, promote, and/or demote Plaintiff.

22. At all times material hereto, Tara O'Keefe (hereinafter referred to as "O'Keefe"), was employed by Defendant UPENN as the "Associate Practice Manager."

23. At all times material, Defendant O'Keefe is believed to be individual able-bodied female.

24. At all times material hereto, as the "Associate Practice Manager" Defendant O'Keefe asserted supervisory authority over Plaintiff. In this role, Defendant O'Keefe maintained control over Plaintiff, including the ability to hire, fire, adjust hours, reprimand, promote, and/or demote Plaintiff.

25. Each Defendant sued in this action has acted, in all respects pertinent to this action, as the other Defendant's agent, and has carried out a joint scheme, enterprise, business plan, or policy in all respects pertinent hereto. The acts of each Defendant are therefore legally attributable to the other Defendant(s).

## ADMINISTRATIVE EXHAUSTION

16. Plaintiff has complied with all statutory prerequisites to file this action.

17. On or about October 23, 2023, the Plaintiff dual-filed her charge for discrimination with the Equal Employment Opportunity Commission ("EEOC"), the Pennsylvania Human Relations Act ("PHRA"), against Defendant alleging the facts as set forth herein (Charge No.530-2024-00711).

18. Plaintiff by and through her attorney requested, that her Charge be simultaneously filed with the EEOC, PHRC and any other State or local agency with whom these Agencies had a work sharing agreement.

19. On or around March 28, 2025, the EEOC issued Plaintiff a Notice of Right to Sue within 90 Days.

20. Plaintiff Robinson commenced this action within ninety (90) days of receipt of the EEOC Right to Sue Letter.

21. This action is being commenced more than one year after Plaintiff's initial agency filing date. To date no determination has been made by the PHRC relating to the herein complaint.

## MATERIAL FACTS

26. On or around 2016, Mrs. Robinson was diagnosed with Generalized Anxiety Disorder ("GAD"), Major Depressive Order ("MDO") and Post Traumatic Stress Disorder ("PTSD").

27. "Generalized Anxiety Disorder involves a persistent feeling of anxiety or dread, which can interfere with daily life. It is not the same as occasionally worrying about things or experiencing anxiety due to stressful life events. People living with GAD experience frequent anxiety for months, if not years."

28. Plaintiff's disability affects her day-to-day life. By way of example, symptoms of GAD include: 1) feeling restless, wound-up, or on edge, 2) being easily fatigued, 3) having difficulty concentrating, 4) being irritable, 5) having headaches, muscle aches, stomachaches, or unexplained pains, 6) difficulty controlling feelings of worry, 7) having sleep problems, such as difficulty falling or staying asleep, and 8) panic attacks. Plaintiff's disability, aggravated by working in person, substantially limits her sleep, concentration, communication, while increasing her pain and discomfort levels, and thereby limits her working ability.

29. As detailed at length below, at all times material, Defendant UPENN was aware of Plaintiff's diagnosis and the ongoing impact on her overall health.

30. On or around July 17, 2022, Defendant UPENN sent an offer letter to Mrs. Robinson advising Defendant Robinson of their offer of employment beginning on or around August 22, 2022. Plaintiff Robinson accepted this offer within the next few days.

31. On or around August 22, 2022, Plaintiff began her employment with Defendant UPENN as a "Medical Assistant" assigned to the Department of PennCare-Bucks County, at Clinical Care Associates.

32. In or around May 2023, Plaintiff Robinson made a formal request for a reasonable accommodation relating to her disability and associated medical treatment.

33. Per her doctor's instructions and the needs of her disability, Plaintiff was requesting the ability to accommodate up to one hour per week of time off to permit her the flexibility of meeting with her doctor(s).

34. In the days and weeks that followed her request, Defendant Robinson's work experience dramatically changed, as she became the target of abuse and hostility merely because she sought a reasonable accommodation.

35. On or around August 9, 2023, Plaintiff was approached by Defendant Miller and instructed to meet immediately in the conference room. Upon entering the conference room, Plaintiff observed Defendant Slover via video conference on the television and Defendant O'Keefe waiting at the table.

36. Defendant Slover abruptly started the meeting, saying, seemingly angered, that they are there to discuss Plaintiff accommodation request. She went on to insist in no uncertain terms that she "didn't care what [Plaintiff] had going on" and that she "had a business to run and money to make." Plaintiff Robinson was floored by her insensitivity, let alone the outright disregard for her protected rights from a medical institution.

37. Defendant Slover when on to "explain" that she didn't trust Plaintiff's request and did not want to approve it because "[Plaintiff would] just end up seeking FMLA when eligible after one year." And "screw [her] over."

38. Defendant Slover ended her disparaging assessment by stating in an effect as though she was doing Plaintiff a favor, that she would approve the accommodation with "conditions."

39. Following the meeting, the Defendants supervisor began a parade of harassing and retaliatory conduct designed to push Plaintiff from the company.

40. By means of example and in no way meant to be an exhaustive list, Defendant Miller would walk around the Buck County Office yelling at Plaintiff Robinson, instructing her to "go where you belong" when she was merely asking colleagues for advice or input.

41. Furthermore, Defendant's supervisors began manipulating Plaintiff's work schedule.

42. In or around June 2023, Plaintiff requested that her schedule be restructured to her previous schedule (8:00 AM - 7:30 PM on Tuesday) so properly align with her assigned provider. Plaintiff was informed that she would have to report at 7:45 AM moving forward as "all MAs needed to arrive 15 minutes prior to their scheduled provider."

43. At no time throughout her employment had Plaintiff been made aware of any such 15-minute advance arrival policy, let alone observe any other MAs who were similarly required to arrive in advance of their providers.

44. Similarly, Defendant Miller shortly thereafter directed Plaintiff that she would need to work on Wednesdays beginning at 11:00 AM and stay on her other assigned days through 4:30 PM, as opposed to her previous 3:30 PM schedule. Plaintiff Robinson's work schedule was becoming erratic and ever changing.

45. Again, upon review and communication with her colleagues, Plaintiff is believed to be the only one who was forced to endure rapidly changing and ever inconsistent work schedule assignments.

46. In discussing the 3:30 PM change with Defendant Robinson, Plaintiff attempted to explain that the 3:30 PM was vital as a result of Plaintiff's childcare. Plaintiff's 3:30 PM schedule permitted her the ability to pick-up her seven (7) year old at the end of the school day, and, as such, a later departure was not viable.

47. Despite her concerns, Defendant Miller refused to engage in any form of dialogue with Defendant Robinson, instead simply stating that Defendant Robinson could either except the one-hour change or resign.

48. Similarly, Defendant Miller began manipulating Defendant Robinson's lunch schedule. In or around June 2023, Defendant Miller began assigning Plaintiff Robinson lunch breaks despite knowingly full and well that Defendant Miller was scheduled with patients. Despite multiple emails and efforts by Defendant Robinson to bring the conflict to the attention of Defendant Miller, refused to provide Defendant Robinson with coverage so that she could eat lunch. More glaring, Defendant Miller would not let Defendant Robinson cancel the lunch "break" assignment and, as a result, Defendant Robinson would not get paid for that time despite being with patients.

49. Furthermore, Plaintiff was informed that in order to request not to work on Saturdays, a day typically deemed an "extra workday," Plaintiff would be required to utilize PTO and request the day "Off" formally through Defendants portal, Estar.

50. Again, upon review and communication with her colleagues, Plaintiff is believed to be the only one who was forced to utilize her own PTO in order to prevent being scheduled on Saturdays.

51. On or around July 26, 2023, Plaintiff again approached Defendant Miller regarding her lunch schedule. Following this conversation, Defendant Miller instructed Plaintiff to meet in her office. Once in the office, Plaintiff was confronted again by Defendant Miller and Defendant O'Keefe. Rather than address Plaintiff ever changing schedule or lack of lunch availability, Plaintiff's supervisors began to baselessly reprimand her, stating she was "in danger" of being written up for her attendance/lateness.

52. When confronted with the dates of the purported tardiness, Plaintiff attempted to demonstrate that she had in fact provided notice to UPENN via text message and though doctors notes. In fact, on one such occasion, it was UPENN's Infectious Disease Department that had instructed Plaintiff not to report to work.

53. On or around July 27, 2023, Plaintiff filed a formal complaint with Defendant UPENN identifying the mistreatment by her supervisors, and expressly asserting that the conduct stemmed from one simple moment: her request for a reasonable accommodation.

54. Despite her protests and complaint, Defendant UPENN failed to timely and thoroughly investigate the mistreatment by Plaintiff's supervisors. As a result, the conduct escalated.

55. On or around August 10, 2023, Plaintiff escalated her complaint, contacting Defendant UPENN's Chief Executive Officer, Mr. Kevin Mahoney, to advise of the mistreatment, remind Defendant of her earlier complaint and again reassert that the harassment and discrimination by her supervisors was only further exacerbating her disability, resulting in increased treatment and medication needs.

56. On or around that same day, Plaintiff contacted her medical providers to address her ongoing mental health challenges caused by the Defendant. As a result, Plaintiff was prescribed escitalopram to address her anxiety/depression, as well as propranolol for her panic attacks.

57. On or around August 16, 2023, Plaintiff was contacted by Defendant's Senior Human Resources Business Partner, Rochelle C. Faulkner (hereinafter "Defendant Faulkner), regarding the status of the "investigation."

58. Defendant Faulkner advised that the nine (9) business day investigation was complete and that, to no surprise of Plaintiff, they failed to substantiate any of her claims. Plaintiff Robinson's lack of surprise stems from a long history of complaints and reports against her supervisors,

namely Defendant Miller and Defendant O'Keefe, regarding their hostility and mistreatment of employees, and, despite those complaints, no action is taken.

59. Despite the denial of conduct outlined in the investigation summary letter provide to Defendant Robinson on or around August 16, 2023, Defendant Faulkner contradicted herself in confirming certain elements of the complaint as substantiated by Defendant Miller herself.

60. By means of example, Defendant Miller confirmed to Defendant Faulker that she did in fact have another employee utilize Defendant Robinson's computer and workstation in her absence, and was instructed by Defendant Faulkner to refrain from this "odd" and "inappropriate" conduct. Similarly, Defendant Faulkner confirmed that pattern of harassing other staff, the disparate treatment pertaining to the use of Plaintiff's PTO on Saturdays, as well as the falsely reported "unexcused" absences/lateness.

61. Defendant Faulkner even so much as confirmed acknowledgement by Defendant Slover of her offensive comments pertaining to "running a business" in relation to Defendant Robinson's accommodation request.

62. Yet despite the above acknowledgement, Defendant Faulkner maintained that the claims were somehow "unsubstantiated."

63. Following the investigation, the schedule changes and retaliation did not cease. In fact, on or around August 18, 2023, Defendant O'Keefe informed Plaintiff that she would not be assigned to work evening for a month, through September 18, 2023, thereby cutting Plaintiff's hours and pay.

64. In or around mid-September 2023, Defendants' employees increased their retaliatory conduct, seemingly isolating if not outright ignoring and excluding Plaintiff. By means of example, and I no way meant to demonstrate the entirety of her experience, Defendants' M.A./P.S.A.,

11

Defendant Stephanie Dowling (hereinafter "Defendant Dowling") would purposefully avoid if not outright discontinued all verbal communications with Plaintiff, creating a barrier in which Plaintiff was limited in performing her job. As such, Plaintiff is now forced to seek guidance from other employees who are not part of the effort to humiliate and ostracize her. To the extent Plaintiff has any interactions with Defendant Dowling, they are seemingly limited to Defendant Dowling purposefully pushing past Plaintiff as though she wasn't even there.

65. Upon information and belief, Defendant's discrimination and retaliation will continue after the date of the instant Charge. Plaintiff Robinson hereby makes a claim for all continuing and future discrimination and retaliation, including unlawful retaliatory litigation.

66. Defendant  UPENN exhibited and continues to exhibit a continuous practice of discrimination, and Plaintiff therefore makes all claims herein under the continuing violations doctrine.

67. The foregoing is just some of the examples of the hostile work environment, unlawful discrimination and employer retaliation to which the Defendant UPENN subjected Plaintiff.

68. Defendant UPENN exhibited a pattern and practice of discrimination.

69. As a result of Defendant's collective and individual actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

70. At all times material hereto, Defendant UPENN' supervisors and management acted with deliberate indifference to the discriminatory treatment, hostile work environment, and retaliation complained of herein.

71. As a result of Defendant's unlawful acts and conduct, Plaintiff suffered and will continue to suffer damages, including but not limited to financial and economic damages, lost wages (back pay and front pay) and benefits, advancement opportunities within the company, compensatory damages, and continues to suffer the same. Plaintiff Robinson has also suffered and will

continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

72. Defendant's conduct had been malicious, willful, extreme, and outrageous, and with full knowledge of the law, Plaintiff respectfully seeks all available damages including but not limited to emotional distress, lost wages, back pay, front pay, statutory damages, attorney's fees, costs, interest, and punitive damages, jointly and solely, as against the Defendants.

73. Defendant is either directly or vicariously responsible for the unlawful acts and conduct complained of herein.

## CAUSES OF ACTION

### COUNT I
### ADA/ADAAA, Sec. 12203 [Section 503]
### Disability Discrimination - Failure to Accommodate
### (*Against Corporate Defendants Only*)

74. Plaintiff Robinson repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

75. Article I of the ADA/ADAAA prohibits employers from denying an individual's reasonable accommodations for a disability.

76. 42 U.S.C. §12112(a) provides that "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

77. Further, 42 U.S.C. §12112(b)(5)(A) provides that " not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that

the accommodation would impose an undue hardship on the operation of the business of such covered entity."

78. At all times relevant, Plaintiff was "disabled" as defined under the law. Plaintiff Robinson was suffering from Generalized Anxiety Disorder ("GAD"), Major Depressive Order ("MDO") and Post Traumatic Stress Disorder ("PTSD").

79. As a result of her disabilities, Plaintiff was substantially limited in regards to major life functions as well as major bodily functions.

80. Defendant UPENN discriminated against Plaintiff because of her disability by denying her accommodation requests.

81. Plaintiff Robinson expressed in certain terms that, provided the accommodation, she would be able to continue performing all the functions of her role.

82. Defendant UPENN, by and through its employees, were put on notice of Plaintiff's disability and need for reasonable accommodation.

83. Defendant UPENN, by and through its supervisors and employees, failed to respond to Plaintiff's requests for reasonable accommodation.

84. Defendant UPENN, by and through its supervisors and employees, failed to engage in any, let alone a meaningful conversation regarding reasonable accommodation.

85. Defendant UPENN would suffer no undue hardship by granting Plaintiff's reasonable accommodation request, upon information and belief, similarly situated individuals were granted the accommodation Plaintiff lawfully and reasonably sought.

86. At all times relevant, Defendant UPENN, by and through its supervisors/management, intended to unlawfully discriminate against Plaintiff by failing to provide reasonable accommodation or participate in the interactive process.

87.  The conduct of Defendant UPENN and/or its agents deprived Plaintiff of her statutory rights guaranteed under the ADA.

88. Plaintiff has been damaged by Defendant UPENN's illegal conduct.

89. As a result of Defendant UPENN's intentional discriminatory conduct and unlawful termination of Plaintiff's employment, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

90. Plaintiff accordingly demands judgment against Defendant UPENN in an amount to be determined at the time of trial plus interest, including, but not limited to, all compensatory damages, emotional distress, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

91. At all times relevant, Defendant UPENN, by and through its employees and agents, acted intentionally and with reckless disregard of Plaintiff Robinson's rights protected by Article I of the ADA/ADAAA.

92. Defendant UPENN's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADA/ADAAA, warranting the imposition of punitive damages in addition to compensatory damages.

93. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by Article I, of the ADA/ADAAA.

*[Purposefully continued on next page]*

**COUNT II**
**ADA/ADAAA, Sec. 12203 [Section 503]**
**Disability Discrimination – Hostile Work Environment**
**(*Against Corporate Defendants Only*)**

94. Plaintiff Robinson repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

95. Article I of the ADA/ADAAA prohibits employers from denying an individual's reasonable accommodations for a disability.

96. 42 U.S.C. §12112(a) provides that "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

97. A claim for harassment based on disability requires a showing that: 1) plaintiff is a qualified individual with a disability; 2) she was subject to unwelcome harassment; 3) the harassment was based on her disability or a request for an accommodation; 4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and 5) that the employer knew or should have known of the harassment and failed to take prompt effective remedial action. See Walton v. Mental Health Ass'n of Southeastern Pa., 168 F.3d 661, 667 (3d Cir. 1999).

98. An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

99. Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

100.    Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

101.    Here, Plaintiff is a qualified individual with a disability because she has a "physical or mental impairment that substantially limits one or more major life activities of such individual" (here, Generalized Anxiety Disorder, Panic Disorder, and Major Depressive Disorder).

102.    Plaintiff was subject to unwelcomed harassment by Defendant UPENN's employees tasked with supervision of Plaintiff.

103.    The harassment was sufficiently severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile, or abusive.

104.    Defendant UPENN's Supervisors, including but not limited to Defendants O'Keefe, Miller and Slover, had the authority to control Plaintiff's work environment, and they abused that authority and failed to act, creating a hostile work environment.

105.    Defendant UPENN's harassing conduct filled the environment of Plaintiff's work area.

106.    Defendant UPENN's knew that the harassing conduct filled Plaintiff's work environment.

107.    Defendant UPENN's harassing conduct occurred on a frequent basis.

17

108.    Defendant UPENN's harassing conduct caused Plaintiff to sustain severe emotional distress.

109.    Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

110.    Defendant UPENN's conduct was both severe and pervasive and unreasonably interfered with Plaintiff's work performance.

111.    The conduct of Defendant UPENN and/or its agents deprived Plaintiff of her statutory rights guaranteed under the ADA.

112.    Plaintiff has been damaged by Defendant UPENN's illegal conduct.

113.    As a result of Defendant UPENN's intentional discriminatory conduct and unlawful termination of Plaintiff's employment, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

114.    Plaintiff accordingly demands judgment against Defendant UPENN in an amount to be determined at the time of trial plus interest, including, but not limited to, all compensatory damages, emotional distress, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

115.    At all times relevant, Defendant UPENN, by and through its employees and agents, acted intentionally and with reckless disregard of Plaintiff Robinson's rights protected by Article I of the ADA/ADAAA.

116.   Defendant UPENN's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADA/ADAAA, warranting the imposition of punitive damages in addition to compensatory damages.

117.   Plaintiff further requests that her attorney's fees and costs be awarded as permitted by Article I, of the ADA/ADAAA.

**COUNT III**
**ADA/ADAAA, Sec. 12203(a)**
**Disability Discrimination – Retaliation**
***(Against Corporate Defendants Only)***

118.   Plaintiff Robinson repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

119.   Article I of the ADA/ADAAA prohibits employers from retaliating against any individual whom makes a reasonable request for an accommodations for a disability.

120.   SEC. 12203 states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." Plaintiff engaged in protected activity when she requested accommodations for her disability.

121.   Defendant UPENN retaliated against Plaintiff as follows:

    a.   wrongful termination;

    b.   disparate discipline;

    c.   denial of leave of absence or reasonable accommodation; and,

    d.   other treatment that was wrongful and disparate on the basis of disability

122. Defendant UPENN's foregoing negative and adverse actions and treatment were temporally proximate to Plaintiff's protected activity such that they are unusually suggestive of a retaliation and thus no further evidence is required of retaliation.

123. Alternatively, evidence exists to show Defendant UPENN's foregoing negative and adverse treatment and conduct was causally related to the protected activity, and thus retaliatory.

124. As a direct and proximate result of Defendant UPENN's retaliation, Plaintiff has suffered loss of wages, including loss of back pay, loss of front pay, loss of amenities of employment and out of pocket expenses, emotional damages, embarrassment, humiliation, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

125. The conduct of Defendant UPENN and/or its agents deprived Plaintiff of her statutory rights guaranteed under the ADA.

126. Plaintiff has been damaged by Defendant UPENN's illegal conduct.

127. As a result of Defendant UPENN's intentional discriminatory conduct and unlawful termination of Plaintiff's employment, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

128. Plaintiff accordingly demands judgment against Defendant UPENN in an amount to be determined at the time of trial plus interest, including, but not limited to, all compensatory damages, emotional distress, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

129.    At all times relevant, Defendant UPENN, by and through its employees and agents, acted

intentionally and with reckless disregard of Plaintiff Robinson's rights protected by Article I

of the ADA/ADAAA.

130.    Defendant UPENN's actions were knowing, intentional, willful, malicious, and in

reckless disregard of Plaintiff's rights under the ADA/ADAAA, warranting the imposition of

punitive damages in addition to compensatory damages.

131.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by

Article I, of the ADA/ADAAA.

**COUNT IV**
**Pennsylvania Human Relations Act ("PHRA"), 42 Pa. Stat. Ann. § 951, et seq.**
**Disability Discrimination - Failure to Accommodate**
**(*Against Corporate Defendants Only*)**

132.    Plaintiff Robinson repeats, reiterates and realleges each and every allegation made in the

above paragraphs of this Complaint as if more fully set forth herein at length.

133.    The PHRA § 955(a) provides that it shall be an unlawful discriminatory practice:

(a)      For any employer because of the race, color, religious creed, ancestry, age,
sex, national origin, or non-job related handicap or disability or the use of a guide or
support animal because of blindness, deafness or physical handicap of any individual
or independent contractor, to refuse to hire or employ or contract with, or to bar or to
discharge from employment such individual or independent contractor, or to
otherwise discriminate against such individual or independent contractor with respect
to compensation, hire, tenure, terms, conditions, or privileges of employment or
contract, if the individual or independent contractor is the best able and most
competent to perform the service required.

*PHRA § 955(a)*

134.    At all times relevant, Plaintiff was "disabled" as defined under the law. Plaintiff

Robinson was suffering from Generalized Anxiety Disorder ("GAD"), Major Depressive

Order ("MDO") and Post Traumatic Stress Disorder ("PTSD").

135.    As a result of her disabilities, Plaintiff was substantially limited in regards to major life functions as well as major bodily functions.

136.    Defendant UPENN discriminated against Plaintiff because of her disability by denying her accommodation requests.

137.    Plaintiff Robinson expressed in certain terms that, provided the accommodation, she would be able to continue performing all the functions of her role.

138.    Defendant UPENN, by and through its employees, were put on notice of Plaintiff's disability and need for reasonable accommodation.

139.    Defendant UPENN, by and through its supervisors and employees, failed to respond to Plaintiff's requests for reasonable accommodation.

140.    Defendant UPENN, by and through its supervisors and employees, failed to engage in any, let alone a meaningful conversation regarding reasonable accommodation.

141.    Defendant UPENN would suffer no undue hardship by granting Plaintiff's reasonable accommodation request, upon information and belief, similarly situated individuals were granted the accommodation Plaintiff lawfully and reasonably sought.

142.    At all times relevant, Defendant UPENN, by and through its supervisors/management, intended to unlawfully discriminate against Plaintiff by failing to provide reasonable accommodation or participate in the interactive process.

143.     The conduct of Defendant UPENN and/or its agents deprived Plaintiff of her statutory rights guaranteed under the PHRA.

144.    Plaintiff has been damaged by Defendant UPENN's illegal conduct.

145.    As a result of Defendant UPENN's intentional discriminatory conduct and unlawful termination of Plaintiff's employment, Plaintiff has suffered and will continue to suffer

financial and economic damages in the form of lost wages (front and back pay) and lost

benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental

anguish, loss of dignity, and other intangible damages.

146.    Plaintiff accordingly demands judgment against Defendant UPENN in an amount to be

determined at the time of trial plus interest, including, but not limited to, all compensatory

damages, emotional distress, liquidated damages, statutory damages, attorneys' fees, costs,

and disbursements of action; and for such other relief as the Court deems just and proper.

147.    At all times relevant, Defendant UPENN, by and through its employees and agents, acted

intentionally and with reckless disregard of Plaintiff Robinson's rights protected under the

PHRA.

148.    Defendant UPENN's actions were knowing, intentional, willful, malicious, and in

reckless disregard of Plaintiff's rights under the PHRA, warranting the imposition of punitive

damages in addition to compensatory damages.

149.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted under

the PHRA.

### COUNT V
### Pennsylvania Human Relations Act ("PHRA"), 42 Pa. Stat. Ann. § 951, et seq.
### Disability Discrimination – Hostile Work Environment
### (*Against Corporate Defendants Only*)

150.    Plaintiff Robinson repeats, reiterates and realleges each and every allegation made in the

above paragraphs of this Complaint as if more fully set forth herein at length.

151.    The PHRA § 955(a) provides that it shall be an unlawful discriminatory practice:

(a)      For any employer because of the race, color, religious creed, ancestry, age,
sex, national origin, or non-job related handicap or disability or the use of a guide or
support animal because of blindness, deafness or physical handicap of any individual
or independent contractor, to refuse to hire or employ or contract with, or to bar or to
discharge from employment such individual or independent contractor, or to

23

otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions, or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the service required.

*PHRA § 955(a)*

152.    The PHRA also prohibits hostile work environment harassment, which is harassing conduct in the workplace that would not have occurred but for one of the above-mentioned protected characteristics of the employee (e.g., sex/gender) that is severe or pervasive enough to make a reasonable person with that protected characteristic (e.g., a reasonable person of the involved sex) believe the conditions of the workplace are altered and the working environment is hostile or abusive. Hoy v. Angelone, 691 A.2d 476, (Pa. Super. 1997).

153.    The fifth and final element of a hostile work environment claim is respondeat superior liability. "Liability will exist where the employer knew or should have known of the harassment and failed to take prompt remedial action. *Id* at 606.

154.    A claim for harassment based on disability requires a showing that: 1) plaintiff is a qualified individual with a disability; 2) she was subject to unwelcome harassment; 3) the harassment was based on her disability or a request for an accommodation; 4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and 5) that the employer knew or should have known of the harassment and failed to take prompt effective remedial action. See Walton v. Mental Health Ass'n of Southeastern Pa., 168 F.3d 661, 667 (3d Cir. 1999).

155.    An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

156.   Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

157.   Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

158.   Here, Plaintiff is a qualified individual with a disability because she has a "physical or mental impairment that substantially limits one or more major life activities of such individual" (here, Generalized Anxiety Disorder, Panic Disorder, and Major Depressive Disorder).

159.   Plaintiff was subject to unwelcomed harassment by Defendant UPENN's employees tasked with supervision of Plaintiff.

160.   The harassment was sufficiently severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile, or abusive.

161.   Defendant UPENN's Supervisors, including but not limited to Defendants O'Keefe, Miller and Slover, had the authority to control Plaintiff's work environment, and they abused that authority and failed to act, creating a hostile work environment.

162.   Defendant UPENN's harassing conduct filled the environment of Plaintiff's work area.

163.   Defendant UPENN's knew that the harassing conduct filled Plaintiff's work environment.

164.   Defendant UPENN's harassing conduct occurred on a frequent basis.

165. Defendant UPENN's harassing conduct caused Plaintiff to sustain severe emotional distress.

166. Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

167. Defendant UPENN's conduct was both severe and pervasive and unreasonably interfered with Plaintiff's work performance.

168. The conduct of Defendant UPENN and/or its agents deprived Plaintiff of her statutory rights guaranteed under the PHRA.

169. Plaintiff has been damaged by Defendant UPENN's illegal conduct.

170. As a result of Defendant UPENN's intentional discriminatory conduct and unlawful termination of Plaintiff's employment, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

171. Plaintiff accordingly demands judgment against Defendant UPENN in an amount to be determined at the time of trial plus interest, including, but not limited to, all compensatory damages, emotional distress, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

172. At all times relevant, Defendant UPENN, by and through its employees and agents, acted intentionally and with reckless disregard of Plaintiff Robinson's rights protected under the PHRA.

173.    Defendant UPENN's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the PHRA, warranting the imposition of punitive damages in addition to compensatory damages.

174.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted under the PHRA.

## COUNT VI
### Pennsylvania Human Relations Act ("PHRA"), 42 Pa. Stat. Ann. § 951, et seq.
### Retaliation
### (As *Against All Defendants*)

175.    Plaintiff Robinson repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

176.    The PHRA prohibits retaliation, making it an unlawful discriminatory practice:

> (d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified, or assisted, in any manner, in any investigation, proceeding, or hearing under this act.

> *43 Pa. Stat. Ann. § 955(d).*

177.    Defendant UPENN retaliated against Plaintiff as follows:

   a.    wrongful termination;

   b.    disparate discipline;

   c.    denial of leave of absence or reasonable accommodation; and,

   d.    other treatment that was wrongful and disparate on the basis of disability

178.    Defendant UPENN's foregoing negative and adverse actions and treatment were temporally proximate to Plaintiff's protected activity such that they are unusually suggestive of a retaliation and thus no further evidence is required of retaliation.

179.    Alternatively, evidence exists to show Defendant UPENN's foregoing negative and adverse treatment and conduct was causally related to the protected activity, and thus retaliatory.

180.    As a direct and proximate result of Defendant UPENN's retaliation, Plaintiff has suffered loss of wages, including loss of back pay, loss of front pay, loss of amenities of employment and out of pocket expenses, emotional damages, embarrassment, humiliation, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

181.    The conduct of Defendant UPENN and/or its agents deprived Plaintiff of her statutory rights guaranteed under the PHRA.

182.    Plaintiff has been damaged by Defendant UPENN's illegal conduct.

183.    As a result of Defendant UPENN's intentional discriminatory conduct and unlawful termination of Plaintiff's employment, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

184.    Plaintiff accordingly demands judgment against Defendant UPENN in an amount to be determined at the time of trial plus interest, including, but not limited to, all compensatory damages, emotional distress, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

185.    At all times relevant, Defendant UPENN, by and through its employees and agents, acted intentionally and with reckless disregard of Plaintiff Robinson's rights protected under the PHRA.

186.    Defendant UPENN's actions were knowing, intentional, willful, malicious, and in
reckless disregard of Plaintiff's rights u under the PHRA, warranting the imposition of
punitive damages in addition to compensatory damages.

187.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted b
under the PHRA

**COUNT VII**
**Pennsylvania Human Relations Act ("PHRA"), 42 Pa. Stat. Ann. § 951, et seq.**
**Retaliation**
***(As Against All Defendants)***

188.    Plaintiff Robinson repeats, reiterates and realleges each and every allegation made in the
above paragraphs of this Complaint as if more fully set forth herein at length.

189.    PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any
person, employer, employment agency, labor organization or employee, to aid, abet, incite,
compel or coerce the doing of any act declared by this section to be an unlawful
discriminatory practice, or to obstruct or prevent any person from complying with the
provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to
commit any act declared by this section to be an unlawful discriminatory practice."

190.    Pursuant to the provisions contained within the PHRA, both employers and individual
employees can be held liable for retaliation under Pennsylvania Law. 43 Pa. Cons. Stat. §
955 (e). See also, Dici v. Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996).

191.    Defendants collectively engaged in unlawful discriminatory practices in violation of
PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory
conduct.

192.    As a direct and proximate result of the Defendants' collective retaliatory conduct in
violation of the PHRA, Plaintiff has suffered and will continue to suffer financial and

economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

193.    The Defendants' collective actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the PHRA, warranting the imposition of punitive damages in addition to compensatory damages.

194.    Plaintiff demands punitive damages as against Defendants jointly and severally.

195.    Plaintiff Robinson further requests that her attorney's fees and costs be awarded as permitted by law.

196.    The conduct of the Defendants deprived Plaintiff Robinson of their statutory rights guaranteed under the PHRA.

197.    Plaintiff has been damaged by the illegal conduct of Defendants collectively and individually

### COUNT VIII
### 29 U.S.C. § 2611
### FMLA – Interference
### (As *Against All Defendants)*

198.    Plaintiff Robinson repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

199.    A covered employer must provide FMLA benefits and protections to eligible employees and comply with their responsibilities under the FMLA and its regulations.

200.    The FMLA provides eligible employees of covered employers with up to 12 workweeks of unpaid, job protected leave in a 12-month period for, specified health and caregiving

reasons, including in order to care for a parent of the employee whom suffers from a serious health condition. *See 29 U.S.C. §§ 2612(a)(1)(c).*

201.    In or around August 2023, Plaintiff had been employed by the Defendant UPENN for at least twelve months and had fulfilled more than 1,250 hours of service with the Defendant UPENN during that twelve-month period. Accordingly, Plaintiff was an eligible employee under the FMLA. 29 U.S.C. § 2611.

202.    Defendant UPENN, by and through Defendants O'Keefe, Miller, and Slover were aware of Plaintiff's disability and her requested accommodation for time off/schedule adjustments so that she can attend medical appointments and treatment sessions for her own care.

203.    The Defendant UPENN violated the FMLA by interfering with, restraining and/or denying Plaintiffs' rights under the FMLA by, *inter alia*:

     a.  Failing to comply with the general notice requirements under the FMLA;
     b.  Failing to comply with the eligibility notice requirements under the FMLA;
     c.  Failing to comply with the rights and responsibilities notice requirements under the FMLA;
     d.  Failing to comply with the designation notice requirements under the FMLA;
     e.  Failing to provide notice of a fitness-for-duty certification with the designation notice as required by the FMLA;
     f.  Discharging and/or constructively discharging, suspending and/or disciplining Plaintiff notwithstanding that Plaintiff was fit to perform her duties and return to work at the end of her FMLA leave;
     g.  Retaliating against Plaintiff for asking for attempting to exercise her rights under the FMLA;
     h.  Failing to provide Plaintiff with the proper FMLA forms and/or medical certifications;
     i.  Failing to supervise and/or train its employees and supervisors on compliance with the provisions of the FMLA;
     j.  Failing to have in place proper FMLA policies, procedures and compliance; and/or
     k.  Otherwise violating the FMLA.

204.    The Defendants' violations of the FMLA were grossly negligent and/or willful.

205.    As a direct and proximate cause of Defendants' collective willful violations of the FMLA, Defendants are liable for Plaintiff's compensation and benefits lost by reason of the above violations, for other actual monetary losses sustained as a direct result of the Defendants' collective violations, and for appropriate equitable or other relief tailored to the harm suffered by Plaintiff.

206.    As a result of Defendants' collective intentional retaliatory conduct, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

207.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

## INJURY AND DAMAGES

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of her career and the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, physical pain, humiliation, mental anguish, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:  June 6, 2025                       **DEREK SMITH LAW GROUP, PLLC**
                                           *Counsel for Plaintiff*

                                             */s/ Caroline H. Miller*         
                                           Caroline H. Miller, Esquire
                                           Derek Smith Law Group, PLLC
                                           1628 Pine Street,
                                           Philadelphia, Pennsylvania 19103
                                           Tel: (786) 292-7605
                                           Fax: (305) 503-6741
                                           E-Mail: Caroline@dereksmithlaw.com